All right, so that case is submitted. We'll move on to the second case of the day, which is Geico v. Glassco, 21-10945. And I think we have Mr. Gerschenhoff here for the appellants, Mr. Levine for the appellees. Mr. Gerschenhoff, whenever you're ready. Good morning, and may it please the Court. Florida has a statute, as you know, called the Repair Act, which was enacted for remedial purposes, including to make sure that repairs were performed in an appropriate manner by appropriate— Can you please start with jurisdiction, please? I beg your pardon? We sent an order to the parties to be prepared to discuss jurisdiction. Can you please discuss jurisdiction? Yes, Your Honor. This Court does have appellate jurisdiction, although after the District Court granted the appellants leave to amend their complaint to drop the non-Repair Act related claims from the complaint to permit an immediate appeal, it is true that there are allegations regarding misrepresentations as to the legitimacy of the repairs, as to Glassco's possession of valid assignments of benefits and so forth. However, those are simply allegations which support Geico's claims that the defendants operated in pervasive violation of the Repair Act. Yes, but, counsel, those are not — the way the District Court set this up, and it's maybe not how I would have done it, but it's how it was set up, is the four last claims, FDUPTA, fraud, unjust enrichment, and common law — I'm missing one, but those four claims were bifurcated. We were going to consider them for simply violations of the Act and everything else, what I'll call hard fraud. And the notion was given to the District Court judge and was told to us and the District Court judge, we have excised everything from this complaint that isn't a Repair Act violation so that we can perfect our appeal pursuant to PERI. And based on that representation, the District Court entered final judgment. In reviewing the complaint, hard fraud is still alleged, not just referentially, but incorporated specifically into the complaint, including the very same things the District Court said she was — the District Court judge said that she was not granting summary judgment on and that we're going to trial. How can that possibly not have claims that are remaining, then, for which summary judgment was not granted? Just to address your question, Your Honor, I understand the distinction that the Court is making between hard fraud and Repair Act violations, but what — Let me be clear. That's not my distinction. Okay. The District Court judge — as was litigated to the District Court judge, that's how this was set up, and that's how the complaint was supposed to be amended. So this is not — Right. This is not something I made up. This is how the case was litigated by y'all. Yes. So now we have it, and I'm trying to make sense of this. Tell me why claims that were not dismissed in summary judgment are not still alleged in this complaint. The misrepresentations are also violations of the Repair Act, Your Honor. So, in other words, the Repair Act makes it unlawful to make any deceptive or untrue statement in with any repair. And so, in order to plead our Repair Act violation claims, in order to allege that the defendants violated the Repair Act, we allege they violated the Repair Act in multiple independent ways, Your Honor. They violated the Repair Act by failing to provide the written estimates, comply with the written estimate provisions. They violated the Repair Act by failing to provide written invoices following the repairs in the requisite form. They violated the Repair Act by unlawfully subcontracting repair work without notice to or consent from the relevant customers. And in addition to that, Your Honor, they violated the Repair Act. Let me be clear. I know you want to fold all of this into the Repair Act. The Repair Act is very specific. It doesn't allow, and your claims about them are very specific. You were required to give an estimate up front. You didn't. You were required to give an invoice at the end. You didn't, and even if you did, it didn't include all the information that And most importantly, I think, for you is, if an independent contractor or someone other than you is doing it, you have to notify the claimant, the customer, that an independent contractor is doing it to get their approval. Those are the violations alleged for Repair Act. The rest of this is just pure fraud. You didn't provide the service. It's phony. You forward signatures, right? Those are also Repair Act violations, Your Honor, by the plain language of the statute. Counsel, Counsel, how is that possibly true then? I know you're saying this now, but this was litigated as two separate buckets. Pure fraud, the exact same things that I'm saying from the district court. I can read to you the district court's order. The district court, for instance, dismissed the common law fraud claims for this reason on page 33 of docket entry 148. But Geico's common law fraud claim also included allegations of misrepresentations that are not based on Repair Act violations. For example, common law fraud section of Geico's complaint alleges that Geico falsely represented benefit assignments, that it was eligible for payments when it wasn't. That exact allegation remains in the complaint. In support of our claim that they violated the Repair Act, Your Honor. Right. Except that it's alleged in the common law fraud, in FDUPTA, in unjust enrichment, in claims that are not Repair Act violation claims. Well, no, Your Honor. We allege that the defendants misrepresented their compliance with the Repair Act in every bill that they submitted to Geico. And that is part of the allegations. That is the allegation in support of our common law fraud. Falsely represented benefit assignments? That's not a Repair Act. Repair Act has nothing to do with benefit assignments. No, but the Repair Act makes it unlawful to make any deceptive or untrue statement in connection with a repair. And that's what that was, Your Honor. Right. So the district court was just wrong. In other words, the district court was wrong to deny summary judgment on the violations based on those claims, those allegations, right? I'm not sure exactly what the court is asking. Let me be more clear. The district court denied summary judgment on these very claims as to common law fraud, FDUPTA, unjust enrichment. The district court denied summary judgment as to our common law fraud, FDUPTA, and unjust enrichment claims to the extent that those claims were specifically and directly based on the defendant's hard fraud. But the defendants made an additional misrepresentation in connection with every claim that they submitted to GEICO. And that misrepresentation was, and the district court did grant summary judgment on this misrepresentation, was that they were in compliance with the Repair Act and were eligible to receive payment. I agree. But there's still these allegations, the same one I just read and the district court denied, that are in the complaint. Well, there are those allegations in the complaint. But instead of being, instead of allegations to the effect that the defendants committed fraud when they falsely represented that they had assignments of benefits, the false representations regarding the assignments of benefits, just to pick one example, Your Honor, are alleged in the amended complaint to demonstrate that the defendants operated in violation of the Repair Act. And then the fraud claims that are alleged in the amended complaint are predicated entirely on misrepresentations that the defendants were in compliance with the Repair Act and were eligible to receive payment. Those generally are alleged in them. So I know you can say that. You're telling me that. But that's not how the complaint reads. All of it is when you reallege all these allegations in there, you then dump them into the substantive count. And so you have dumped into the substantive count the same things for which the district court denied summary judgment on. Right? Isn't that exactly right? No. I wouldn't say that's correct. I would say that the substantive count pleads that the defendants violated the Repair Act and the allegations regarding their various kinds of misrepresentations remain in the amended complaint in order to demonstrate that they operated in violation of the Repair Act and, by extension, that every claim they submitted to GEICO falsely represented their compliance and eligibility for payment. Two things would seem to me to have to be true. One is you're arguing the district court got it wrong when she denied summary judgment, in which case we don't have jurisdiction for that order, or you're trying to allege the same exact things in the same complaint in the same counts for which the district court didn't and trying to pull the wool over my eyes. One of those things has to be true. No. I'm not trying to pull the wool over the Court's eyes, Your Honor. Well, I'm just speaking about me, my eyes. Sure. Not trying to pull the wool over your eyes either, Your Honor. Rather, those allegations appear in the amended complaint in order to demonstrate that the defendants violated the Repair Act, which specifically precludes the making of false or deceptive statements. Yeah, but not having anything to do with assignment of benefits? I mean, that has nothing to do with the Repair Act at all. Well, I would disagree, Your Honor. If you misrepresent to an insurance company that you have a valid assignment of benefits and therefore have standing to collect on a claim, you are making a false and deceptive statement. So the district court got that wrong. So the district court got it wrong when she denied summary judgment on that exact point. You know, I wouldn't say whether the district court got it wrong, but I don't think the district court denied summary judgment. Again, one of those things has to be true. Either the district court got it wrong by viewing this not as a Repair Act claim or you're trying to pull a fast one. So one of those things has to be true. I think that the district court granted summary judgment dismissing GEICO's claims to the extent that they were based on Repair Act or violations of the Repair Act or misrepresentations regarding compliance with the Repair Act. I do think that the district court got that wrong. And so alleged in the amended complaint is that the defendants made various categories of misrepresentations in violation of the Repair Act. And that's what we allege in the amended complaint. The district court did grant summary judgment on those claims, Your Honor. All right. So why don't you spend a few minutes talking about under the – if you've got Repair Act claims, why it is that you've got a cause of action under the Repair Act. Well, Your Honor, for more than 30 years, Florida courts, including Florida district courts of appeals have – Well, so let's just start with the language of the statute, customer. How are you or could you ever be a customer? Well, as a threshold matter, it is true that GEICO does not strictly meet the statutory definition of a customer. There's no dispute that the Repair Act defines the customer as the person who signs the written repair estimate. Here, however, there were no written repair estimates given to anyone. There was no one who could have signed a written repair act. And so by extension, there's no customer who could possibly assert any rights under the Repair Act in this case. But there were people who could have signed. Those – that class just doesn't include you ever, right? So there were people who plausibly could have been customers, but you're not among that class. Well, there's no one who could have signed in this case because it was undisputed from the record before the district court that the defendants never presented any written repair estimates to anyone in advance of performing these repairs. So in effect, what the defendants did, or the appellees did, was they insulated themselves from their own violations of the Repair Act, from liability for their own violations of the Repair Act by their own violations of the Repair Act. They disregarded the requirement that they present the written estimate waiver and the written estimates to their customers. And so your argument, I gather, is sort of like plain text be damned. Someone's got to have standing in effect to enforce this thing. Otherwise, the statute is null and void, or the remedial provisions of the statute. And it's important to note that for more than 30 years, Florida courts, including numerous Florida district courts of appeals, have held that, number one, the Repair Act is a remedial statute. Number two, it should be interpreted liberally to advance its remedial ends. And number three, in the 1616 Sunrise Motors case, which we cited in our papers, the repair shop in that case specifically argued that it could collect from a non-customer, even though its violations of the Repair Act would preclude it from recovering from the customer. But counsel, wasn't that under the different remedies? So the way the Repair Act is set up is there's three remedies. There's the private cause of action that Judge Newsom's asking about. There's an administrative remedy that we're not talking about here. And then there's a remedy against the repair shop where you go through a bond procedure and a lien. And that statute allows any party with an interest to get a bond, to then go ahead and get the car back, and then their litigation is done through that. That's the statute through which we're talking about where a non-party can come in, right? Oh, no, I would disagree, Your Honor. In the ---- Tell me where. I have the case here. Show me exactly where the private cause of action, the statute here, was being interpreted by the Fourth DCA and the Sunrise Motors Court. Well, in the Sunrise Motors case, the Fourth DCA was holding that the repair shop was precluded from recovering from a non-customer just as it would be precluded from recovering from a customer. So, counsel, let's go back, because the language matters. There's the private cause of action that Judge Newsom's asking about. You have no argument about being customer there. There just is none. There's the administrative action. We're not talking about that. And then there's the third bucket, which is this lien procedure that allows someone, if the repair shop is holding the car improperly, for someone with an interest in the car to then seek a bond, to then come in, and then the repair shop can file. Show me where in the Sunrise Motors case it's referring to the private cause of action. It doesn't refer to the private cause of action. Because it's not interpreting that. However, to say that not only is the repair shop precluded from asserting a lien, but it is or otherwise recovering for the repair. Right. But, counsel, that was done under a different procedure. It doesn't even implicate the private cause of action here. Right? It does not refer to the private cause of action. Right. There the repair shop was trying to recover. So let's ask the real question. Is there any Florida case published anywhere in the State of Florida that has interpreted customer in the private cause of action to be anything other than as defined in the statute? Ever? I would say in the 1616 Sunrise Motors case, the court, well, it didn't interpret the word customer differently. You just admitted, and I appreciate that. It doesn't even interpret or mention the private cause of action. So let's go back to my question. Is there any published case in the entire State of Florida in the history of this statute that has read the term customer in the private cause of action to be anything other than as defined in the statute? Not that I'm aware of, but can I offer a but? Sure. Okay. I appreciate that. No, thank you, Your Honor. No but. Every court to have considered the issue has held that a repair shop which violates the Repair Act is not entitled to collect on its repairs. Even against that backdrop, even if Geico's Repair Act claim was properly dismissed, and I would dispute whether it was properly dismissed, obviously, for the reasons set forth in our papers. Even if that were true, the district court improperly granted summary judgment dismissing Geico's declaratory judgment claim, for example, which sought a declaration that because of the defendant appellee's violations of the Repair Act, they were not entitled to collect on any of their outstanding charges. We should have gotten summary judgment on that claim based on the record that was in front of the district court. And in addition, all of the defendant's bills falsely represented their compliance with the Repair Act and eligibility for payment. So I would say that the district court, even if it arguably may have properly dismissed Geico's direct cause of action under the Repair Act, it shouldn't have granted summary judgment dismissing Geico's fraud, unjust enrichment, or FDUPA claims. Here, you know, the defendants made a series of misrepresentations to Geico, and every bill they submitted, okay, to the effect that they were entitled to payment when, in fact, they were not. They were unjustly enriched by Geico's payments. They were never entitled to receive payment. Numerous courts have held that a repair shop that violates the Repair Act not only is not entitled to collect on its charges but has to disgorge any charges that it already — any payments that it already received. And I would say as well, Your Honor, that where a repair shop operates in pervasive violation of numerous material provisions of the Repair Act and through those violations collects payment on charges that were non-reimbursable, that that repair shop, you know, commits deceptive and unfair trade practices such as would support a FDUPA claim. Okay. I think we've exhausted the butt. Thank you so much. Thank you, Your Honor. You've got your full time for rebuttal. All right, Mr. Levine. Is it Levine or Levine? Levine. Levine. Very well. Good morning, Your Honors. Good morning. Let me please the Court. I would like to address first the jurisdictional issues that we were asked to address because I'm not — I understand why the Court would need clarification on this. This is not the same paradigm as Perry to the extent that Perry extracted one cause of action and summary judgment was directed already toward the entirety of the other causes of action. Here we have a decision in which the causes of action that survive summary judgment are split as to those which arise pursuant to the Motor Vehicle Act and allegations that are of what the Court called hard fraud. If we begin by looking at what Geico actually did in the amended complaint, which is the operative complaint here, and I did object to certain references to forgery and unperformed services that were included in the statement of case in Geico's initial brief. But it's clear that Geico did extract any allegation that the Court was referring to as hard fraud. Really? Counsel, docket — so we're talking about docket entry 184, which is the amended complaint. Paragraphs 136 and 48 refer to, quote, reimbursement for phony, unnecessary, unlawful or otherwise unreimbursable windshield replacement services. Phony, unnecessary, unlawful? That's the very definition of fraud. It's saying that you provided phony services and services that were unneeded. I'm going to help Geico out here by clarifying what I think that they were doing. I get — listen, let's — Because of the catch-all in the Motor Vehicle Repair Act — Counsel, counsel, I understand what you guys were trying to do. You have a legal issue. You have it in your teeth. And you want to get the appellate court to rule on it. I understand what you were trying to do here. But what you can't do is play fast and loose. And that seems to be what happened here. The district court — you guys alleged that — you. Your opposing counsel alleged this complaint. And, frankly, it's a shotgun pleading because it alleges two things within individual counts. So the district court, instead of sending you back for yet another try at this, decided, OK, I'm just going to bifurcate this thing. I'm going to do those things. And she listed them. It's the things that I listed. It's not giving the estimate. It's having invoice incorrect. It's not disclosing that independent contractors were providing the services. Those were the violations of the Repair Act that were alleged. And then there's the fraud. And the district court said, as to the former, I am granting summary judgment. As to the latter, I am not granting summary judgment. And so then what happens is the amended complaint comes in, and it alleges the very same things for which the district court did not grant summary judgment. The very same allegations. Word for word. I can show you a red line. I created it. The court has jurisdiction here because the final judgment was entered at GEICO's request to end all judicial labor and to eliminate all triable issues of fact. GEICO has not, in their appeal, alleged that there are residual disputed issues of fact. This court is reviewing the judgment, not the opinion. And to whatever extent, the court, which represented that it reviewed closely the amended complaint, and that final judgment is intended to be entered on the allegations of the amended complaint under the final judgment rule, as the Supreme Court has said time and again, that all deference must be given to the findings of fact and of law that are incorporated into the district's court decision in rendering a final judgment. And to whatever extent an allegation might have slipped through the cracks there, I think that the invited error doctrine would apply because the district court ratified exactly what GEICO was asking. There's a few, Counsel, there's a few problems. You can't stipulate to jurisdiction. That's number one. And number two is slip through the cracks. I count 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, or 13 of identical allegations to those the district court denied summary judgment on. That's not slipping through the cracks. All these allegations to the extent that the district court denied the summary judgment are framed in a way that can't even survive Twombly and Inquil. They're all just general allegations of phony, illusory. GEICO removed the substantive counts because, frankly, they knew that there was no evidence on the record to even have a trial volition. And let's be clear what this case is really about. GEICO, in my opinion, has wrongfully fashioned this entire complaint to allege that there is something in that statute that renders any technical noncompliance with the statute noncompensable. That exists in the Health Care Act. That exists in the No Fault Act. GEICO is essentially seeking to legislate the same kind of voiding penalty, and they're not being genuine with the court about what the statute holds. The supremacy of the text is very clear. In fact, the remedy section of the statute expressly contemplates quantum merit compensation for any noncompliance if there is authorization to do the repairs, which in 1,772 of 1,773 cited cases here there is. So the whole notion that there is not compensation for that reason alone, even going extrinsic to what's contained in the final judgment, if there is any reasonable basis in the record, we have to be affirmed. And here there is no ability for GEICO even if under a de novo review of the summary judgment order it's found that the court does not agree that either by no reasonable construction can GEICO be considered a customer or that the voiding penalty is required in order for them to have a cause of action arising under the statute. GEICO's only damage theory is we get our money back because, like a broken record under 1616 Sunrise, there's no compensation available even in quantum merit. And under any of their theories, there is no remedy to get their money back, and they never disclosed any other damage theory. As the court held clearly in its summary judgment order, we gave value. There's no allegation anywhere. There's nothing in the record that ever says that a windshield was not replaced. The whole notion, even of the phoniness which the court is concerned that these are allegations that survive summary judgment, let's be clear what they're really alleging there. That's based not on the fact that there's a technical noncompliance with the case of we did not have disclosure of the fact that we're using independent contractors. What they're saying is that Glasgow is not a company. That's what makes the claim noncompensable, phony, and the same thing with assignment of benefits. The statute, as Your Honor noted, makes no mention of assignment benefits. The Motor Vehicle Repair Act contains no prescription of any nature regarding assignment of benefits. But Geico's theory, again, is only based on the fact that Glasgow cannot bill under its name because they use independent contractors. And as Judge Mizell said, that does not constitute fraud vis-a-vis the insurer. And it certainly doesn't create a remedy for Geico of getting our money back because they have an obligation to pay for the broken windshield, and they don't have any evidence that they would have paid a lower bill. They pay unilaterally what they want to pay anyway, which is always underpayment, but they don't have any evidence that they would have paid less if the work was performed by a W-2 employee instead of an independent contractor. So Geico would have a remedy, which is 817234, which provides a cause of action to an insurer in the event that anyone makes any misrepresentation regarding an insurance claim. But that requires an adjudication of criminal guilt for insurance fraud. Why is sending the false compensation? There's some piece of paper that's sent from Glasgow. It's probably done by fax or electronically over to the insurance company for reimbursement. Those statements are representing that Glasgow is the one that provided the service and did not and complied with the other elements of the act. Why is that not a false statement? Well, first, I'm not sure where that statement refers to compliance with the Motor Vehicle Act. One might say that it's noncompliant to the extent that it doesn't represent the odometer reading, for example, but that's not a representation of compliance with the act. It's simply a bill that Glasgow, which is a duly licensed… Let's make it real simple. When you send a bill and it has your name on top, it's assumed both based on the custom that you're the one that provided the service and you didn't. There's no allegation that the service was never provided. You didn't provide the service. Your client didn't provide the service. And your opposing counsel is stating that that is a material fact for reimbursement. And you can understand why. An insurance company actually wants to know who does it so that when they investigate the claim, they can go to that person and say, was the windshield actually there? Do you have some paperwork I can see? But there's no evidence that Glasgow did not perform the service. I just want to be clear, counsel. You're telling me there's no evidence in the record that Glasgow, the corporate entity, did not provide the replacement services? Well, there's certainly evidence that Glasgow did provide the service as well. There are claims that were submitted for which Glasgow did not provide the service. There is evidence of that, isn't there? I don't believe that there is because the IRS has no prescription against the company. I'm not talking about the IRS. Counsel, listen to my question, please. Is there evidence in the record that Glasgow, the corporate entity, was not the actual person that provided the actual corporate entity or its employees that provided the service? There is evidence in the record that not every glass windshield that was replaced was done by an independent contractor. You're asking a question I didn't ask, and I'm asking you to answer a question I did ask. Do you want me to repeat the question? Yes, Your Honor. Okay. And we're going to stay as long as it takes to get an answer to this. I just want to be clear, so don't think that we can just count down the time. Is there evidence in the record that someone other than Glasgow, the corporate entity, provided the service there? Yes, there is evidence that there were independent contractors. Okay. So the allegations are, and the evidence, as I understand it, shows that bills were then submitted by Glasgow, the corporate entity, for reimbursement. And the insurance company is stating it is a material fact to us that we know who actually is providing the services. A, it's statutorily required that we know, but B, even putting aside the statute, it's really important when someone submits a bill that we know who actually provided the service so we can actually investigate the claim. Why is that not a false statement? I, again, understand Your Honor's point of view. My point of view is that Glasgow is operating through independent contractors. Counsel, counsel, counsel, I don't have a point of view. I'm asking a question. Why is that not, if those facts are to be believed, I'm not saying they are the facts, but if there's evidence in the record to support it, why are those facts to believe not a false statement or a wire fraud? Because there's no basis to make the leap to the conclusion that Glasgow is not performing the services. Because a company can operate through independent contractors. Counsel, I'm not saying it can or can't. I'm not talking about the IRS, and I'm not talking about whether you are criminally liable or not. But if a bill states that Company A provided the service, and in fact Company B provided the service, is that not a false statement that's communicated to somebody else, whoever that somebody else is? Arguably. And if there's evidence in the record to suggest that that is a material fact to the person it's sent to, then wouldn't that be a wire fraud? Not under RICO, because there wouldn't be the proximate causation that's required by RICO to consummate a cause of action. So the district court, as I understand it, ruled on three bases in RICO. Thank you for going a little bit forward with me. So you have to allege a predicate. You're a wire fraud, and there were multiple ones. Second, there was no evidence of intended fraud. And third, the continuity requirement. Those are the three bases of the district court's order. So we've dealt with the first basis. The second basis deals with intended fraud. As I understand the district court's order, with regard to the hard fraud allegations, the district court said that there was sufficient evidence of individual involvement because the individuals, the three individual defendants, in fact were involved in day-to-day operations with the company, knew about it, were involved with reimbursements, were involved with the insurance companies and with the customers, and so they would have had knowledge with regard to the fraud allegations. I'm having trouble understanding why that same evidence wouldn't be sufficient for at least a reasonable jury to imply intended fraud. Well, as the district court said, with respect to RICO, in granting summary judgment on the non-hard fraud allegations, that the use of independent contractors is not fraudulent vis-a-vis GEICO. It's not. It's not inherently. But sending a bill for reimbursement and telling that person that person A, as opposed to person B, is the one that provided the service could be fraudulent. Could it not? No, because the work order states that the work is being sublet, so I don't even agree on a factual basis that there's not disclosure, which would violate the statute. So you're saying every single bill, I just want to be clear, every single bill discloses that a company other than Glasgow provided the service, then that was communicated to GEICO? It's on the work order. Was that communicated to GEICO? Yes. It's on what's submitted to GEICO for payment. I don't need more questions. Okay. Very well. Thank you so much, Mr. Gershom. You've got your five minutes remaining. Thank you, Your Honor. Would the Court like to hear more about jurisdiction at all, or shall I just move on? You can move on. Okay. You know, as a threshold matter, just to briefly address a couple of the points that the Court just raised, the district court improperly dismissed the racketeering claims for lack of scienter and lack of continuity. There were ample facts in the record to demonstrate that the three owners of Glasgow, a closely held company, were intimately involved in the submission of the allegedly  Well, I would say that if you have a pattern of bills which are fraudulent or unlawful for multiple independent reasons, and you have three individuals who are intimately involved in the creation and the submission of the bills, at a minimum, scienter is not appropriately decided. I'm not sure that the evidence showed that all three were involved in the submission and creation of the bills. As I understand it, the evidence as to one was simply he was involved in day-to-day operations. He's the CEO. He sort of created the idea. And then there was another guy who was more involved in the day-to-day with the independent contractors and another guy who did the paperwork. Is that fair? I think that's fair, Your Honor, but I would say that at a minimum, scienter is a question that should have been reserved for the fact finder rather than adjudicated in summary fact. Yeah, but that's not good enough just to say that, well, intent is a fact issue and so it goes. You've got to present some evidence when summary judgment is filed. So it's hard for me to say that just because you're CEO and you're involved in the day-to-day means that you know for a fact that you are violating the law. I mean, that's what intent to defraud requires. You are intentionally defrauding someone else as opposed to we're providing a service and maybe not complying with some state law right now, but otherwise everything else is kosher. I agree with you, Your Honor, and that's why I think that those sorts of very fact-intensive questions really should be reserved for the fact finder. And this Court has repeatedly held to the effect that issues of scienter or state of mind are usually not appropriately resolved on motions for summary judgment, and I would say that is true here as well. Moving on to the continuity issues that the Court found, the Court found that there was a want of open-ended continuity to support our racketeering claims because GEICO subsequently enacted remedial measures to try to prevent this kind of unlawful activity from occurring in the future. However, multiple circuit courts, although I couldn't find one from this circuit, but multiple circuit courts around the country have held that the threat of continued criminal activity that would support a finding of open-ended continuity, which in turn would support a RICO claim, shouldn't be assessed retrospectively. It's whether or not the threat was there at the time when the racketeering activity was there. So let's put aside for the moment the Repair Act. So forget the Repair Act right now for the purpose of this question. What damages could you possibly have? Our damages are based on the payments we made on nonreimbursable claims. Yes, but the only reason they're nonreimbursable, you're saying, is because of the Repair Act. That's true, Your Honor. Put aside the Repair Act. Someone puts a claim in for a windshield. They need a windshield. So there's, again, put aside the hard fraud. They need a windshield. They get a windshield. It appears to be a price that is consistent with what the prices are, and they send you a bill for that. What damages are there? The damages are based, again, and, you know, I don't think you can divorce really the damages question from the fact that the claims were nonreimbursable pursuant to the Defendant's Repair Act violations. I just don't think FIDUPTA and unjust enrichment, for example, and even common law fraud worked that way. It can't just be that there's a technical legal violation here and that that technical legal violation requires, even assuming you're reading the statutes right, and that that says you're not entitled to reimbursement. Where everyone got exactly what they want under the common law. I would disagree with that, Your Honor, and I would disagree with the characterization of the Defendant's violations of the Repair Act as technical. It's not like they forgot to dot an I or cross a T, Your Honor. They operated in pervasive violation of numerous material provisions of the Repair Act, which is designed to protect the public. And that is why numerous Florida courts have held that a repair shop that can't collect on its charges, even in quantum merit. And I know that the Defendant's appellees make much of the fact that subsequent to some, but not all of those decisions, the Repair Act was amended to include section 559.921 subsection 7, which says, hey, if the repairs are authorized, and if the price of the repairs are authorized, then a repair shop might be able to collect, the court might award a repair cost to the repair shop at its discretion. However, here, that subsection is non-operative, because here there's no dispute that nobody ever authorized the cost of any of these repairs. And that's one of the many kinds of violations by errant repair shops that the Repair Act was designed to remedy. The legislative history of the Repair Act makes clear that, in part, it was enacted to prevent these kind of fait accompli, oh, you know what? We did the repairs. Here's how much it costs. You know, we didn't tell you beforehand to pay our bill. You know, that's something that the Repair Act was designed to address specifically, among many other things. You know, and here the Defendants, they operated in violation of those provisions and many others. It divested them of any right to be paid. And unlawfully rendered services, Your Honor, cannot constitute adequate consideration so as to defeat an unjust enrichment claim. If you provide a quote-unquote service, but you provide the service in flagrant violation of the law and you've got Florida District Courts of Appeal decisions over and over again saying, hey, if you violate this law, you can't collect on your charge, and you collect anyway, you've got to disgorge that money. That's, you know, and I would say those are our damages, Your Honor. Okay, very well. Thank you both very much. Case is submitted. Thank you.